# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 23, 2026

Lyle W. Cayce
Clerk

No. 25-30380

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

TALANZO DEBROW,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:24-CR-238-1

Before HAYNES, HIGGINSON, and HO, *Circuit Judges*.

STEPHEN A. HIGGINSON, *Circuit Judge*[1]:

Talanzo Debrow appeals his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He contends that § 922(g)(1) violates the Second Amendment as applied to him, an individual whose single disqualifying conviction was for aggravated criminal damage to property under Louisiana law. This predicate presents a matter of first impression for our court. Finding that the government has not met its burden

---

[1] Judge Ho concurs in the judgment for the reasons stated in *United States v. Cockerham*, 162 F.4th 500 (5th Cir. 2025).

to bring forth evidence of a historical tradition supporting the permanent disarmament of similarly situated persons, we vacate the district court's order denying Debrow's motion to dismiss his indictment and remand for reconsideration of these issues in the first instance.

I.

Debrow's prior felony conduct took place in May of 2019, arising out of a traffic stop on a stolen vehicle in which Debrow was the driver. Debrow attempted to flee the traffic stop, but, in doing so, he "shifted the car twice to ram into the troopers' cars." Debrow and a juvenile passenger were removed at gunpoint, after which the troopers found a stolen firearm in the vehicle. Debrow was charged with, and pleaded guilty to, aggravated criminal damage to property, in violation of Louisiana Revised Statutes § 14:55(A). Debrow was sentenced to three years of hard labor.

In January of 2023, after Debrow served time, Shreveport Police found a firearm in the backseat of a car that was attributed to Debrow. Due to his predicate offense, Debrow was charged and indicted with possession of a firearm by a convicted felon, in violation of § 922(g)(1).

Debrow filed a motion to dismiss his indictment, arguing that § 922(g)(1) was unconstitutional as applied to him. He argued that the government was unable to demonstrate that disarming him based on his predicate felony conviction was consistent with any analogous laws from around the time of the Nation's founding. The district court denied the motion.

Debrow pleaded guilty to one count of possession of a firearm by a convicted felon. However, his plea was conditional, reserving his right to appeal the district court's denial of his motion to dismiss. The district court sentenced Debrow to 56 months' imprisonment and entered final judgment on July 1, 2025. Debrow timely appealed on the same grounds he argued

before the district court. We have jurisdiction over the appeal under 28 U.S.C. § 1291.

## II.

"We review preserved challenges to the constitutionality of a criminal statute de novo." *United States v. Howard*, 766 F.3d 414, 419 (5th Cir. 2014) (citing *United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009)).

## III.

Debrow challenges his conviction under § 922(g)(1), arguing that it is unconstitutional as applied to him. He contends that the government cannot satisfy its burden to demonstrate that disarming him is consistent with this Nation's historical tradition of firearm regulation, as required by *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) and subsequent jurisprudence. Moreover, Debrow asserts that the government is unable to identify a sufficient historical analogue to his conviction for aggravated criminal damage to property. In response, the government makes only a brief argument, relying on distinguishable precedents wherein our court rejected as-applied challenges.

Our court has held that § 922(g)(1) is not facially unconstitutional, but also recognized that it may be unconstitutional as applied to certain defendants on the basis of their predicate conviction. *United States v. Diaz*, 116 F.4th 458, 467–71 & n.4, 771–72 (5th Cir. 2024). To explore the as-applied challenge, we follow the Supreme Court's instruction in *Bruen*. We conduct a historical inquiry to determine whether "the government [has demonstrated] that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to" a § 922(g)(1) defendant's felony convictions. *Diaz*, 116 F.4th at 467. This tradition requires drawing a connection from Founding-era laws that are "'relevantly similar' to § 922(g)(1)." *United States v. Kimble*, 142 F.4th 308, 313 (5th Cir. 2025)

(quoting *United States v. Daniels*, 124 F.4th 967, 973 (5th Cir. 2025)). When "assessing similarity, we consider 'whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified.'" *Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 29).

Debrow's predicate presents our court with a question of first impression. The burden is on the government, yet it spent no more than five pages attempting to meet this burden. Overwhelmingly, its argument to us is that Debrow's underlying facts rise to the level of lifetime dangerousness. Secondarily, the government asserts that the statute Debrow was convicted under, in itself, supports disarmament under historical going-armed laws. We find the former approach untenable in light of circuit precedent, and also find that the government has not met its burden on the latter approach.

## A.

Debrow was charged with aggravated *property* damage, yet, by pulling facts from his Presentence Report, the government's primary argument is that Debrow actually was attempting to evade arrest with a vehicle—a different felony charge entirely. To assess this analytical approach, and the departure it would be from our precedent, we briefly contextualize the state of § 922(g)(1) jurisprudence.

A majority of circuits continue to uphold congressional law as written, holding that that "§ 922(g)(1) is constitutional as applied to *all* felons," thus making it a criminal offense for felons to possess firearms and providing clear notice of the law. *United States v. Mancilla*, 155 F.4th 449, 454 n.5 (5th Cir. 2025) (ELROD, C.J., concurring) (discussing the Second, Fourth, Eighth, Ninth, Tenth, and Eleventh Circuits as taking this approach).

4

No. 25-30380

Two circuits permit as-applied challenges to § 922(g)(1) by considering a defendant's life characteristics and dangerousness. *See id.* (discussing the Third and the Sixth Circuit's approach).

Turning to our court, we instead permit as-applied challenges, in contrast to the majority of circuits. *See Diaz*, 116 F.4th at 470 n.4. But we also—typically—do not "embrace the view that courts should 'look beyond' a defendant's predicate conviction 'and assess whether the felon's history or characteristics make him likely to misuse firearms.'" *Kimble*, 142 F.4th at 318 (quoting, *contra*, *Pitsilides v. Barr*, 128 F.4th 203, 211–12 (3d Cir. 2025)). In fact, in *Kimble*, our court explicitly recognized that "[t]he relevant consideration is a defendant's 'prior convictions that are punishable by imprisonment for a term exceeding one year,' not unproven conduct charged contemporaneously with a defendant's (g)(1) indictment or prior conduct that did not result in a felony conviction." *Id.* at 318 (quoting *Diaz*, 116 F.4th at 467). Yet, as evident here, the government principally asks us to affirm a § 922(g)(1) conviction on the basis of conduct underlying the predicate, as opposed to the predicate itself.

This suggestion that appellate courts—courts of review—have prerogative to reconfigure and make dangerousness determinations ourselves, as magistrates do for bail and district courts do for sentencing, seems to stem from a line of cases that retrench from *Kimble*'s predicate-by-predicate approach, notably *United States v. Morgan* and *United States v. Simpson*, both of which were decided after *Kimble*. *See United States v. Morgan*, 147 F.4th 522, 528 (5th Cir. 2025); *United States v. Simpson*, 152 F.4th 611, 614 (5th Cir. 2025). The government anchors on this branch of caselaw to argue that we, on appeal and in the first instance, *can* examine some wide orbit of facts and decide which Americans go to jail for bearing arms.

No. 25-30380

Yet, this judicially imagined, retrospective test—which often could relitigate uncharged and unproven conduct from the past—proves obscure at best and impossible at worst.[2] The primary injustice it permits is a failure of notice to Americans who have already completed their sentence for a predicate felony, potentially decades prior, and who now try to obey the law. There is no way for someone who seeks to exercise Second Amendment rights to know what past criminal history and life circumstance we, on appeal, will decide puts them in prison because we, on appeal, deem them irredeemably "dangerous."[3] Needless to say, the government's approach would fail to give district courts and juries a coherent test to apply in criminal cases, either through jury instructions or, apparently, in mini trials that district courts must initiate over "dangerousness."

It bears repeating that convictions under § 922(g)(1) carry serious consequences, incarcerating individuals for crimes they could not anticipate and doing so dissimilarly across the country. And yet, defendants are left to decipher the patchwork of predicates that count in our circuit. Rife with issues of providing inadequate notice, a fundamentality of our justice system,

---

[2] Our fractured opinion today reflects the nature of our court's jurisprudence on this issue and, in my opinion, the necessity of full-court review of § 922(g)(1). Until we clarify these difficulties, I, too, remain as much a broken record on this issue as our jurisprudence is fractured, which continues to denigrate both due process and the Second Amendment.

[3] The instant facts prove the difficulty with assessing dangerousness. Had Debrow hit police cars going 100 mph, dangerousness may seem obvious even assessed in the first instance on appeal. But here, he struck two cars at an apparently low speed, rendering it difficult to say that the single accident demonstrates that the Framers would have disarmed him for life. *See United States v. Cockerham*, 162 F.4th 500, 518 n.11 (5th Cir. 2025) (HIGGINSON, J., dissenting) ("Americans who were violent once may well not stay dangerous forever, just as some felons with non-violent convictions may continue to present grave public danger, like Al Capone."). However, if our court eventually adopts this as the appropriate methodology, Debrow must be correct then, that facts can also *rebut* the inference of dangerousness from an otherwise violent prior predicate.

we decline to adopt the approach the government anchors on, which would draw us further astray from *Kimble* in the process.

B.

In addition to advocating that our court credit the uncharged facts of Debrow's predicate offense, the government falls back on its argument that Debrow's predicate is inherently violent and, therefore, historical going-armed laws justify permanent disarmament.

The going-armed laws were "a particular subset of the ancient common-law prohibition on affrays." *United States v. Rahimi*, 602 U.S. 680, 697 (2024) ("Derived from the French word 'affraier,' meaning 'to terrify,' 4 [W. ]Blackstone[, Commentaries on the Laws of England] 145[ (1769)], the affray laws traced their origin to the Statute of Northampton[.]"). The Supreme Court has explained that "the going armed laws prohibited 'riding or going armed, with dangerous or unusual weapons, [to] terrify[] the good people of the land.'" *Id.* (alteration in original) (quoting 4 Blackstone 149). The targeted "conduct disrupted the public order and led almost necessarily to actual violence." *Id.* (citation modified). The punishment was "forfeiture of the arms . . . and imprisonment." *Id.* (alteration in original) (quoting 4 Blackstone 149); *see also Diaz*, 116 F.4th at 470–71 (collecting colonial-era statutes that prohibited going armed offensively). Our court has found that going-armed laws "'confirm' that '[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed.'" *Simpson*, 152 F.4th at 614 (quoting *Rahimi*, 602 U.S. at 698).

We have repeatedly deemed these laws to be "relevant historical analogues to § 922(g)(1)." *Diaz*, 116 F.4th at 471; *see also United States v. Morgan*, 147 F.4th 522, 529 (5th Cir. 2025) (same), *cert. denied*, No. 25-6677, 2026 WL 568341 (U.S. Mar. 2, 2026). Indeed, § 922(g)(1) "resembles going-

armed laws in that both 'impose[] "permanent arms forfeiture as a penalty"—a consequence that places a "comparable burden on the right of armed self-defense"—once an individual [is] convicted of a disqualifying offense.'" *Simpson*, 152 F.4th at 614 (alterations in original) (quoting *Morgan*, 147 F.4th at 529).

While true that our court has affirmed § 922(g)(1) convictions where the relevant predicate felony involved violence, including drug trafficking and aggravated battery causing bodily harm, the application of this law to the present case is neither straightforward nor obvious. *See, e.g.*, *Kimble*, 142 F.4th at 312; *United States v. Schnur*, 132 F.4th 863, 870 (5th Cir. 2025).

We underscore that Debrow's predicate is a property crime. The statute he was convicted under provides, "Aggravated criminal damage to property is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion." LA. STAT. ANN. § 14:55(A) (2014).

The government generally asserts that going-armed laws support disarming those who pose a threat to public safety. Its argument distills into a single sentence: "Debrow cannot credibly dispute that his predicate felony involved an 'inherent risk' of violence or harm to others; he admitted to it by virtue of pleading guilty to the offense." But we find two difficulties with adopting the government's going-armed analysis.

For one, the government's only justification is based on the statute Debrow was convicted under, which does not sufficiently answer the necessary inquiry we must conduct. While our court has decided that certain predicates can be statutorily deemed a "crime of violence," the same does not apply here. *See Schnur*, 132 F.4th at 870. In *Schnur*, we considered a predicate offense of aggravated battery and found that the elements of the state statute satisfied the Supreme Court's definition of a "crime of

violence." *See id.* at 869 n.3 (citing *Borden v. United States*, 593 U.S. 420, 424 (2021)). As defined by the Court in *Borden*, "[a]n offense qualifies as a violent felony under [the elements clause of the Armed Career Criminal Act] if it 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" 593 U.S. at 424 (quoting 18 U.S.C. § 924(e)(2)(B)(i)); *see also id.* at 432 (finding that "the clause covers purposeful and knowing acts, but excludes reckless conduct").

Accepting that Debrow's predicate offense is necessarily a crime of violence would require our court to make a leap. While it is true that this property crime under state law requires an element that pertains to foreseeability of endangerment, it contains no clearly purposeful or knowing act. *Contra Simpson*, 152 F.4th at 615 (relying on going-armed laws but recognizing that "[t]he Texas statute under which [the defendant] was convicted seeks to 'discourag[e] forceful conflicts between the police and suspects' by elevating the offense to a felony when the suspect has used a vehicle to evade arrest."). Moreover, we are unaware of precedents—and the government has offered none—that equate foreseeability of injury to dangerousness that disarms for life.[4]

Second, because the statutory element cannot clearly resolve the issue and more broadly, the government must meet its affirmative burden to demonstrate that regulating Debrow's possession of a firearm is "consistent with the Nation's historical tradition" of permanent disarmament of those with analogous criminal histories. *Bruen*, 597 U.S. at 24. Our court has underscored that this is, in fact, a "heavy burden," *United States v. Mitchell*, 160 F.4th 169, 177 (5th Cir. 2025), and the Supreme Court reaffirmed that

---

[4] Notably, if this property crime qualifies, it is difficult to understand how 61 other offenses the state labels as violent, including purse snatching and stalking, would not also disarm Americans for life.

the government bears this burden in its unanimous opinion just recently in *United Stated v. Hemani*, No. 24-1234, 2026 WL 1751710, at *4 (U.S. June 18, 2026). Yet, with minimal discussion afforded to it, the government has not met that burden here.

In turn, we cannot justify applying the going-armed laws analogue in this case; doing so would risk running afoul of the Supreme Court's direction and, more specifically to our circuit, greenlighting the improper use of going-armed laws as a stand-in for a general dangerousness inquiry. Such laws cannot, and should not, continue to bear the weight being stacked atop.

Contrary to the argument presented to us, adopting going-armed laws as a historical basis here would not be a mere application of precedent, but instead an expansion. With essentially no historical effort from the government, our court would then sweep a property crime into the orbit of going-armed laws. We reiterate that we do not deny that the nature of this property crime involves "foreseeab[ility] that human life might be endangered." LA. REV. STAT. § 14:55. However, unlike many of the other predicates our court has deemed to be violent crimes, the nature of this predicate—as both a property crime and requiring only foreseeability of harm—gives us pause, rendering it apt for consideration in the first instance by the district court with proper party argument.

## IV.

For the foregoing reasons, we VACATE the district court's order denying Debrow's motion to dismiss his indictment and REMAND for further proceedings consistent with this opinion.

No. 25-30380

HAYNES, *Circuit Judge*, dissenting:

Talanzo Debrow contends that 18 U.S.C. § 922(g)(1) violates the Second Amendment as applied to him—an individual whose disqualifying conviction was for aggravated criminal damage to property under Louisiana law. Because I disagree, and would thus affirm, I respectfully dissent.

Debrow's prior felony conduct took place in May 2019. As reflected in the presentence investigation report, Louisiana State Police attempted to conduct a traffic stop on a stolen vehicle in which Debrow was the driver. Debrow attempted to flee the traffic stop, but, in his attempt to flee, he struck two patrol units. "Debrow shifted the car twice to ram into the troopers' cars." Debrow and a juvenile passenger were removed at gunpoint. Troopers found a stolen Glock in the vehicle. As a result of this conduct, Debrow was charged with, and pleaded guilty to, aggravated criminal damage to property in violation of Louisiana Revised Statutes § 14:55(A). That statute provides: "Aggravated criminal damage to property is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion." LA. STAT. ANN. § 14:55(A) (2014). He was sentenced to three years of hard labor. Then, soon after Debrow was released from prison for this prior offense, he committed the offense that is the subject of this appeal.

In my view, Debrow's as-applied challenge fails because the face of his predicate felony clarifies that its commission involved "a clear threat of violence to others." *See United States v. Simpson*, 152 F.4th 611, 614 (5th Cir. 2025), *cert. denied*, 146 S. Ct. 1830 (2026). His predicate felony—aggravated criminal damage to property—required proof that, in the process of committing the offense, it was "foreseeable that human life might be endangered." § 14:55(A). So, we need not look beyond the predicate felony itself.

No. 25-30380

My conclusion falls in line with our court's precedents. The Supreme Court set out the framework for analyzing Second Amendment challenges a few years ago. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022); *United States v. Betancourt*, 139 F.4th 480, 482 n.1 (5th Cir. 2025) ("Unlike this criminal case, *Bruen* was a civil case brought by 'law-abiding' citizens." (quoting *Bruen*, 597 U.S. at 15)), *cert. denied*, No. 25-5514, 2026 WL 135617 (U.S. Jan. 20, 2026). Our court made it clear that § 922(g)(1) is not facially unconstitutional but noted that some criminals can receive a dismissal due to an as-applied challenge, which is set out in *United States v. Diaz*, 116 F.4th 458, 467–71 & n.4, 771–72 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2822 (2025). Consistent with *Bruen*'s framework, we have explained that our "Constitution permits disarming individuals who pose a clear threat of violence to others or whose predicate felony convictions involve violence." *Simpson*, 152 F.4th at 614. Among the relevant analogues in this context are the going-armed laws, which "'confirm' that '[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed.'" *Id.* at 614 (quoting *United States v. Rahimi*, 602 U.S. 680, 698 (2024)). Applying these principles, we have affirmed § 922(g)(1) convictions where the relevant predicate felony involved violence. *See, e.g.*, *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per curiam), *cert. denied*, 146 S. Ct. 255 (2025); *United States v. Reyes*, 141 F.4th 682, 686–87 & n.8 (5th Cir. 2025) (per curiam); *Betancourt*, 139 F.4th at 484 & n.6; *Simpson*, 152 F.4th at 614–15; *United States v. Hernandez*, 159 F.4th 425, 429 (5th Cir. 2025) (per curiam); *United States v. Cordova*, 176 F.4th 381, 382–83 (5th Cir. 2026) (per curiam).

As such, I fully conclude that Debrow's predicate felony involved violent conduct and, as a result, his as-applied challenge must fail. In my view, disarming Debrow is consistent with this Nation's historical tradition

12

No. 25-30380

of firearm regulation. *See Diaz*, 116 F.4th at 467. Thus, I see no need to remand.

\*　　\*　　\*

Because I would affirm, I respectfully dissent.